[Cite as *Partin v. Morrison*, 2015-Ohio-4740.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

LIBERTY PARTIN,                                  :

      Petitioner-Appellee,             :

            - vs -

JOSH MORRISON,                                  :

      Respondent-Appellant.         :

CASE NO.   CA2015-01-003

O P I N I O N
11/16/2015

CIVIL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2014-0656

Liberty Partin, 1770 Crosstown Road, Williamsburg, Ohio 45176, petitioner-appellee, pro se

T. David Burgess Co., L.P.A., T. David Burgess, 110 North Third Street, Williamsburg, Ohio 45176, for respondent-appellant

**M. POWELL, J.**

{¶ 1}   Respondent-appellant, Josh Morrison, appeals a decision of the Brown County Court of Common Pleas issuing a domestic violence civil protection order (DVCPO) against him in favor of petitioner-appellee, Liberty Partin.

{¶ 2}   The parties were in a relationship and lived together for about one and one-half years.  They were not married.  The relationship ended in the spring of 2014.  Petitioner is

now in a relationship with Charles Richey. Petitioner and Richey do not live together. Richey lives with his mother.

{¶ 3} On September 25, 2014, petitioner filed for and was granted an ex parte temporary DVCPO against respondent. The petition alleged that during their relationship, respondent damaged petitioner's car, threw her belongings out in the yard, broke three of her phones, and threatened to put his hands on her. The petition also alleged that respondent now harasses Richey, threatening him and his family. The petition further alleged that petitioner went to the sheriff's office on September 24, 2014, after respondent called Richey and told him he was "coming to his house and he was packing. After that, me and [Richey] went to [Richey's] house and [respondent] was outside in a silver Chrysler 300 honking the horn."

{¶ 4} On October 6, 2014, a full hearing was held before a magistrate. At the hearing, both parties, proceeding pro se, testified. Richey and his mother testified on behalf of petitioner. Respondent's mother testified on his behalf. At the conclusion of the hearing, the magistrate issued a five-year DVCPO. The DVCPO only named petitioner as a protected person. Respondent filed objections to the magistrate's decision. On December 10, 2014, the trial court overruled the objections and adopted the magistrate's decision.

{¶ 5} Respondent appeals, raising one assignment of error:

{¶ 6} THE TRIAL COURT ERRED BY ADOPTING A DOMESTIC VIOLENCE CIVIL PROTECTION ORDER THAT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED IN THIS MATTER.

{¶ 7} A petition for a DVCPO is governed by R.C. 3113.31. Pursuant to that statute, in order to grant a DVCPO, a "trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph

two of the syllabus. For the purpose of this case, domestic violence "means the occurrence of one or more of the following acts against a family or household member: [p]lacing another person by the threat of force in fear of imminent serious physical harm or committing a violation of [R.C.] 2903.211 [menacing by stalking]." R.C. 3113.31(A)(1)(b).

{¶ 8} Before granting a DVCPO, the trial court must hold a full hearing. R.C. 3113.31(E)(1). The petition itself is not evidence and its contents cannot be considered by the trial court in granting the DVCPO. *McIntyre v. Johnson-Estes*, 8th Dist. Cuyahoga No. 95445, 2011-Ohio-1696, 2011 WL 1327392, *4, citing *Felton* at 43 (a pleading is not admissible into evidence at a hearing to prove a party's allegations and must not be considered as evidence by the court).

{¶ 9} A trial court's decision to grant or deny a DVCPO will not be reversed where such decision is supported by the manifest weight of the evidence. *Caramico v. Caramico*, 12th Dist. Clermont No. CA2015-03-025, 2015-Ohio-4232, ¶ 26. Under a manifest weight challenge, a judgment will not be reversed as long as the judgment is supported by some competent, credible evidence going to all essential elements of the case. *Id.* The appellate court must be guided by a presumption that the trial court's factual findings are correct because the trial judge is best able to view the witnesses and observe their demeanor and use these observations in weighing the credibility of the proffered testimony. *See McBride v. McBride*, 12th Dist. Butler No. CA2011-03-061, 2012-Ohio-2146.

{¶ 10} The trial court issued the DVCPO on the grounds that "[r]ecently, the Respondent texted a message about shooting the Petitioner" and that "[t]he Respondent has also been calling and texting the Petitioner after being told not to do so." Specifically, the trial court made two separate findings in support of the issuance of the DVCPO. The first finding related to a threat made to petitioner. The second finding, although not concerned with the content of the communications, emphasized their repeated, uninvited nature.

{¶ 11} The trial court's finding that respondent sent a text threatening to shoot petitioner was apparently relevant to the "placing another person by the threat of force in fear of imminent serious physical harm" component of "domestic violence." Under R.C. 3113.31, the threat of force must place a party in fear of both imminent and serious physical harm. *Bargar v. Kirby*, 12th Dist. Butler No. CA2010-12-334, 2011-Ohio-4904, ¶ 13. Threats of violence constitute domestic violence under the statute if the fear resulting from those threats is reasonable. *Hyde v. Smith*, 12th Dist. Butler No. CA2014-09-193, 2015-Ohio-1701, ¶ 12. In order to grant a civil protection order, past acts alone are not enough and there must be some evidence of current domestic violence, as set forth in the statute. *Id.*

{¶ 12} With regard to this threat to shoot petitioner, there was no evidence presented at the hearing that respondent ever *texted petitioner* with a threat to shoot her. The "text message" referred to by the trial court must actually refer to a post on respondent's Facebook page, apparently posted five days before the hearing, which states: "There is two bitches. One, Charles [Richey] or Liberty [petitioner], yeah, I guess I tried to shoot them the other night, when I worked nine 'till seven in the morning, laugh my ass off. People are crazy."

{¶ 13} Respondent testified he works Sunday through Friday, 9:00 p.m. to 7:00 a.m. During oral arguments before this court, respondent's counsel characterized this Facebook post as respondent's sarcastic denial of the claim he had tried to shoot petitioner and Richey because he had an alibi, i.e., he was at work. Although the written word as opposed to the spoken word may not fully convey this sarcastic context, it is a reasonable interpretation of the Facebook post.

{¶ 14} This Facebook post does not appear to be a threat to shoot anyone, but rather appears to be a comment about a past event or claim, whether real or fabricated. Neither Richey nor petitioner testified respondent tried to shoot them. Nor did they testify that

respondent directly and personally threatened to shoot them. There is no evidence, nor was it ever alleged, that respondent had a gun in the presence of petitioner or Richey. While there was testimony about the Facebook post, there was none concerning the event referred to in the Facebook post.

{¶ 15} Petitioner testified at the hearing about respondent's other threats to physically harm her. Petitioner testified that six or seven months before the hearing, when she and respondent were dating, respondent threatened to hit her and told his mother to hit her. However, respondent "didn't put his hands on me or anything." There is no evidence in the record respondent ever physically harmed petitioner. The trial court ostensibly discounted this testimony as it did not cite the incident as a ground for the issuance of the DVCPO.

{¶ 16} Petitioner also testified that she had "been getting threatening phone calls" and texts from respondent. Petitioner did not testify, nor was evidence introduced, about the specific content of these phone calls or texts. When asked by the magistrate whether "there [were] any threats against you, in any of those text messages," petitioner replied, "The ones we have, no."

{¶ 17} Petitioner also testified that Richey, her boyfriend, received a phone call from respondent threatening to burn down Richey's house and warning that respondent had a gun.[1] However, the call was addressed to Richey, and not to petitioner. Furthermore, testimony at the hearing indicates that while Richey lives with his mother, petitioner does not live with them. As stated earlier, Richey is not a protected person under the DVCPO. In addition, because Richey is not a "family or household member" of respondent, as defined by R.C. 3113.31(A)(3), neither Richey nor petitioner are entitled to the issuance of a DVCPO based upon threats made to Richey. In any event, the trial court likewise ostensibly

---

1. Richey and his mother also testified that respondent either called or spoke to Richey, threatening to burn Richey's house and killing Richey and his family.

discounted this testimony as it did not base the issuance of the DVCPO upon this incident.

{¶ 18} At the end of petitioner's direct examination and following her testimony regarding respondent's phone calls, texts, and Facebook postings, the magistrate asked petitioner, "do you fear for your safety, from [respondent]?" Petitioner replied, "Yes." There was no other testimony or evidence as to petitioner's fear with regard to respondent. Petitioner did not testify or present evidence she feared imminent serious physical harm. Furthermore, there was no evidence as to the specific content of these communications, other than the Facebook "shooting" post, to permit a finding that they were reasonably sufficient to place petitioner in fear of imminent serious physical harm.

{¶ 19} The trial court also issued the DVCPO on the ground that respondent had been calling and texting petitioner after being told not to do so. As stated earlier, the texts themselves were not introduced into evidence and there was no testimony as to the specific content of these text messages and phone calls. Because the trial court characterized these calls and texts as repeated and uninvited, but not as threatening, we assume the trial court considered them as evidence that respondent had engaged in menacing by stalking, and not as threats of force placing petitioner in fear of imminent serious physical harm.[2]

{¶ 20} As set forth above, R.C. 3113.31 defines domestic violence as including the commission of menacing by stalking in violation of R.C. 2903.211.

{¶ 21} With regard to menacing by stalking, R.C. 2903.211(A)(1) provides in relevant part that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause * * * mental distress to the other person." "Pattern of conduct" is defined as "two or more actions or incidents closely related in time[.]"

---

2. We acknowledge that the Facebook "shooting" post may also serve as part of the basis to establish the "menacing by stalking" component of "domestic violence." As we have already discussed that post in some detail, we will not discuss it further as it relates to the establishment of menacing by stalking.

R.C. 2903.211(D)(1). "Mental distress" is defined in R.C. 2903.211(D)(2) as:

> (a)  Any mental illness or condition that involves some temporary substantial incapacity;
>
> (b)  Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

While petitioner testified she feared for her safety because of respondent's conduct, she did not testify or present evidence she is either suffering from temporary substantial incapacity, or sought or is in need of mental health treatment as a result of respondent's conduct.

{¶ 22} A reviewing court is required to uphold a DVCPO as long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate factual conclusions. *McGuire v. Sprinkle*, 12th Dist. Warren No. CA2006-06-069, 2007-Ohio-2705, ¶ 19. We are cognizant that petitioner acted pro se in this proceeding. No doubt, with the assistance of counsel, petitioner could have more effectively presented her evidence in accordance with the statutory requirements for the issuance of a DVCPO.

{¶ 23} However, upon a thorough review of the evidence presented at the hearing, and in light of all of the foregoing, we find that the record does not support the grounds specifically relied upon by the trial court in issuing the DVCPO. The trial court's grounds for the issuance of the DVCPO were restricted to a specific Facebook post and the repeated and uninvited text messages and phone calls. Hence, the trial court discounted all other testimony as a basis for the DVCPO and we defer to the trial court's determination in this regard. The trial court was in the best position to "view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.*

{¶ 24} We therefore find that the trial court, given the nature of the evidence

presented, could not reasonably find by a preponderance of the evidence that petitioner was in danger of domestic violence as defined by R.C. 3113.31, and thus the issuance of the DVCPO was against the manifest weight of the evidence.

{¶ 25} Respondent's assignment of error is sustained.

{¶ 26} Judgment reversed and we hereby order the DVCPO herein vacated.

PIPER, P.J., and S. POWELL, J., concur.