[Cite as *Barrett v. Barrett*, 2017-Ohio-250.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| BEATRICE BARRETT, | : | |
| Petitioner-Appellee, | : | CASE NO.  CA2016-04-033 |
| | : | O P I N I O N |
| - vs - | | 1/23/2017 |
| | : | |
| LARRY J. BARRETT, | : | |
| Respondent-Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 15 DV 7255

Beatrice Barrett, petitioner-appellee, pro se

Timothy R. Evans, 110 North Third Street, Hamilton, Ohio 45013, for respondent-appellant

**HENDRICKSON, J.**

{¶ 1}   Respondent-appellant, Larry Barrett ("Larry"), appeals from the decision of the Warren County Court of Common Pleas granting petitioner-appellee, Beatrice Barrett ("Beatrice"), a domestic violence civil protection order (DVCPO).  For the reasons discussed below, we affirm the court's decision.

{¶ 2}   Larry and Beatrice were in the midst of a divorce.  They began living separate from one another on October 11, 2015.  On December 15, 2015, Beatrice petitioned for and

was granted an *ex parte* protection order.

{¶ 3}   In the petition, Beatrice alleged that she had been hiding from Larry since the date of their separation because Larry told her he would "see her dead" before he would let her divorce him.  She said that Larry displayed a gun when she returned home to recover some property and alleged that Larry told her that "those two state troopers" did not scare him, referring to state troopers who lived in Beatrice's apartment complex.  This statement was meant to communicate that he knew where she lived.

{¶ 4}   On February 1, 2016, the court conducted an evidentiary hearing on Beatrice's petition.  Beatrice appeared *pro se.*  Larry appeared with counsel.  Beatrice testified about a number of occurrences indicating that her estranged husband was stalking her.

{¶ 5}   In late September 2015, prior to her moving out of their martial home, Beatrice alleged that she saw Larry in the parking lot of Huntington Bank as she was leaving the bank. The next day, as she was pulling out of a McDonalds parking lot, Larry pulled his car up alongside her, laughing, and saluted her.

{¶ 6}   These two instances caused Beatrice to believe that Larry was somehow tracking her.  In order to prevent him from tracking her movements, she went to her car dealership and had them turn off any tracking features on her car.  In addition, she went to the Sprint store and asked them to turn off the tracking function on her cell phone.  As a result of her actions, Beatrice testified that Larry called her sometime later in October 2015 and stated that he was going to cancel her phone service because she had turned off the phone's tracking feature.

{¶ 7}   In late November 2015, Beatrice stated she was with her sisters at a T.G.I.F. restaurant for several hours.  At around 10:30 p.m., as she and her sisters were leaving, Larry pulled up in his vehicle and drove past them.  A week or so later Beatrice and her sisters were at a Longhorn restaurant for several hours.  She then went to a Kroger store and

noticed Larry, who pulled his car alongside of hers as she was leaving the store.

**{¶ 8}** Beatrice testified that Larry called her a few days after the Kroger encounter and mentioned that he was not scared of "those two state troopers." Beatrice explained that two state troopers lived in her apartment complex and parked their cars in the parking lot. Thus, Beatrice explained that Larry's statement was meant to indicate that he knew where she lived. Following this phone call, Beatrice petitioned for the DVCPO.

**{¶ 9}** Finally, on December 21, 2015, Beatrice alleged that she was at El Rancho Grande restaurant with her friends. Soon after she left she received a call from her friends telling her that Larry was there. Upon hearing that Larry had once again appeared at a location where she was present, Beatrice searched her car and found a small electronic tracking device, called a "Zubie," attached underneath the dashboard.

**{¶ 10}** The court asked Beatrice if the pattern of behavior that she was alleging had an effect on her mentally. She responded affirmatively and added that when Larry called her and told her the two state troopers did not scare him she "broke down."

**{¶ 11}** Larry testified and denied he had been stalking his wife. With respect to the encounter at Huntington Bank, he said he was shopping at a nearby mall. With regard to appearing at El Rancho Grande, he said he was at a gas station and a friend who was with him spotted Beatrice's car parked at the restaurant. He wondered what Beatrice was doing at the restaurant because she did not like Mexican food so he drove to the restaurant and sat in the lot for two or three minutes and then left.

**{¶ 12}** Larry admitted seeing Beatrice two others times, at the Sprint store and at Longhorn restaurant.[1] With respect to his statement that the state troopers did not scare him, he explained that he said this because Beatrice told him that if he came over to her

---

1. Beatrice testified about going to the Sprint store but did not testify that she saw Larry there.

apartment complex he would go to jail. So he responded by saying that the state troopers did not scare him because he had done nothing to deserve going to jail.

{¶ 13}   Finally, Larry admitted to installing the Zubie tracking device in Beatrice's car. He installed it in September 2015 because Beatrice "had too many doctor's appointments." After he installed the device he discovered that Beatrice was at a hotel.

{¶ 14}   On February 2, 2016, the magistrate granted Beatrice a DVCPO. Larry filed objections, which were overruled by the court. Larry presents one assignment of error for our review.

{¶ 15}   THE COURT ERRED IN UPHOLDING THE MAGISTRATE'S ISSUING A DOMESTIC VIOLENCE PROTECTION ORDER AND THE COURT'S JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.

{¶ 16}   Larry argues that Beatrice failed to prove the statutory requirements for issuing a DVCPO. He contends that Beatrice's evidence failed to demonstrate that he knowingly intended to cause her any mental distress or that she suffered mental distress. And he argues that the greater weight of the evidence indicated that the various encounters with his estranged wife were by chance.

{¶ 17}   R.C. 3113.31 governs the process of obtaining a DVCPO. In order to grant a DVCPO, a "trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus. For the purpose of this case, domestic violence means "committing a violation of [R.C.] 2903.211 [menacing by stalking]." R.C. 3113.31(A)(1)(b).

{¶ 18}   As defined by R.C. 2903.211(A)(1), "menacing by stalking" means engaging in a pattern of conduct that knowingly causes another "to believe that the offender will cause * * * mental distress to the other person."  "Pattern of conduct" is defined as "two or more

actions or incidents closely related in time[.]" R.C. 2903.211(D)(1). And "mental distress" means either: (1) "any mental illness or condition that involves some temporary substantial incapacity;" or (2) "any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services." R.C. 2903.211(D)(2)(a) and (b). The trial court "may rely on its knowledge and experience in determining whether mental distress has been caused." *Smith v. Wunsch*, 162 Ohio App.3d 21, 2005-Ohio-3498 (4th Dist.), ¶ 18. However, a DVCPO petitioner is not required to prove that he or she actually suffered mental distress. *Wulf v. Opp*, 12th Dist. Clermont No. CA2014-10-074, 2015-Ohio-3285, ¶ 10; *State v. Horsley*, 10th Dist. Franklin No. 05AP-350, 2006-Ohio-1208, ¶ 47. Instead, menacing by stalking only requires proof that the offender's pattern of conduct would cause the victim to believe that the offender *will cause* the victim mental distress.

{¶ 19} A trial court's decision to grant or deny a DVCPO will not be reversed where such decision is supported by the manifest weight of the evidence. *Caramico v. Caramico*, 12th Dist. Clermont No. CA2015-03-025, 2015-Ohio-4232, ¶ 26. Under a manifest weight challenge, a judgment will not be reversed as long as the judgment is supported by some competent, credible evidence going to all essential elements of the case. *Id.* The appellate court must be guided by a presumption that the trial court's factual findings are correct because the trial judge is best able to view the witnesses and observe their demeanor and use these observations in weighing the credibility of the proffered testimony. *McBride v. McBride*, 12th Dist. Butler No. CA2011-03-061, 2012-Ohio-2146, ¶ 11.

{¶ 20} The trial court adopted the magistrate's decision granting the DVCPO on the grounds that Beatrice proved menacing by stalking. The court cited Beatrice's testimony of Larry's repeated conduct appearing where she was and that he admitted to installing a

tracking device in her car. Furthermore, the court noted that Beatrice testified that the stalking conduct had caused her to "break down."

{¶ 21} After thoroughly reviewing the record, we find that competent and credible evidence supports the trial court's decision. The evidence established a pattern of stalking conduct. It is undisputed that Larry secretly installed a tracking device in his estranged wife's vehicle. Then, on at least five occasions, Larry appeared in the same area as Beatrice when she was out with family, friends, or running errands. This conduct also involved taking steps to ensure he would be close to and seen by Beatrice, such as pulling up alongside her in his vehicle.

{¶ 22} Larry also informed Beatrice that he was aware that she had turned off the tracking function on her cell phone, which indicated he was actively monitoring her location. Finally, Larry contacted Beatrice and made a comment about not being scared of state troopers who lived at Beatrice's apartment complex. This comment indicated that Larry knew where Beatrice was living. Furthermore, the statement intimated a violent act that would necessitate police involvement. The trial court did not believe Larry's claim that he was not stalking his wife and that these were merely chance encounters. We generally defer to the factfinder on matters of witness credibility. And there is nothing in the record that would make us second guess the court's judgment.

{¶ 23} We also conclude that competent and credible evidence supports the conclusion that Larry acted knowingly, i.e., that he knew his conduct would probably cause Beatrice to believe that he intended to cause her mental distress. Larry would have known that secretly installing a tracking device in his estranged wife's car, following her or appearing in places where she would be, and implying that her home is not a safe place, would cause her and the average person to suffer mental distress. And in fact, Beatrice testified that she suffered a breakdown.

{¶ 24} Larry cites *Partin v. Morrison*, 12th Dist. Brown No. CA2015-01-003, 2015-Ohio-4740, where this court reversed the issuance of a DVCPO on what he asserts was far more evidence than presented in this case. In *Partin* we concluded that the petitioner failed to offer credible evidence that the respondent threatened her. *Id.* at ¶ 14, 16. And she only testified that the respondent's conduct caused her to fear for her safety but did not testify as to any other temporary and substantial mental incapacity. *Id.* at ¶ 21. However, Beatrice presented evidence of Larry's stalking conduct and of mental distress she suffered that went beyond fearing for safety but culminated in a mental breakdown. Accordingly, *Partin* is distinguishable. In sum, we conclude that competent and credible evidence supports the trial court's decision to grant Beatrice a DVCPO and Larry's sole assignment of error is meritless and hereby overruled.

{¶ 25} Judgment affirmed.

S. POWELL, P.J., and RINGLAND, J., concur.