[Cite as *McVean v. McVean*, 2018-Ohio-4062.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| KRISTIN A. McVEAN, | : | |
| Petitioner-Appellee, | : | CASE NO. CA2018-03-054 |
| | : | O P I N I O N |
| - vs - | | 10/8/2018 |
| | : | |
| JASON McVEAN, | : | |
| Respondent-Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DV17-11-0772

F. Joseph Schiavone Co., L.P.A., Frank J. Schiavone IV, 2 South Third Street, Suite 300, Hamilton, Ohio 45011, for petitioner-appellee

Cordell Law LLP, Mary C. Patton Coffman, 201 East Fifth Street, Suite 1410, Cincinnati, Ohio 45202, for respondent-appellant

**HENDRICKSON, P.J.**

{¶ 1} Respondent-appellant, Jason McVean, appeals from a decision of the Butler County Court of Common Pleas, Domestic Relations Division, granting a domestic violence civil protection order ("DVCPO") against him in favor of petitioner-appellee, Kristin A. McVean. For the reasons set forth below, we affirm the trial court's decision.

{¶ 2} In November 2017, Jason and Kristin were in the midst of a divorce. The

parties resided in separate homes and shared custody of their minor children.

{¶ 3} On November 7, 2017, Kristin petitioned for and was granted an *ex parte* protection order. In the petition, Kristin alleged that there had been an altercation between the parties on November 5, 2017, when Jason was returning the children to her home at the completion of his parenting time. Kristin stated Jason pushed her twice on this occasion, screamed in her face, and threw the children's belongings on the ground before driving away. In the petition, Kristin also described an incident that occurred "a couple months ago" when the parties' oldest child came home with a bruise on her forearm that the child said occurred when Jason "squeezed her arm really hard" while he was angry. Kristin also alleged that while Jason had not physically "put his hands" on her prior to the November 5, 2017 incident, he was physically abusive to the family's dog for over a year. Finally, Kristin alleged that Jason had threatened to call children services on her at least three times during the course of the divorce proceedings, he "constantly" texted and called her phone, and he "pulled contacts from [her] phone records."

{¶ 4} On December 13, 2017, a full hearing was held before a magistrate. At the hearing, both parties were represented by counsel. Kristin testified that at approximately 8:30 p.m. on November 5, 2017, Jason arrived at her house to return the children at the conclusion of his parenting time. There was a thunderstorm that evening and Jason, rather than getting the children out of his vehicle and walking them to the door, sat in the vehicle with the children while he waited for Kristin to come get the children out of the car. Jason texted Kristin "any day now" after she did not walk outside to get the children. He then texted Kristin that if she did not come get the children out of his car by 8:45 p.m., he was going to start honking his horn. When Kristin did not meet his demands, Jason proceeded to honk the horn for approximately ten minutes. Kristin still did not come outside to get the children, so Jason drove away from the residence.

{¶ 5}    Kristin texted Jason that if he did not come back and return the children, she would call the police.  Jason returned, and Kristin approached the vehicle to remove the children.  However, instead of opening a passenger door to remove the children, Kristin opened the driver-side door to speak with Jason.  Kristin testified she "calmly told [Jason] that he needed to get out of the car and bring the children to the door because that was part of being a father."  Kristin states that Jason "just flipped" and he started screaming at her, tried to close the car door on her arm, and pushed her backwards.  Jason then "stood up out of the car, pushed [her] backwards on [her] chest and got in [her] face" where he screamed at her that she was a "piece of trash" and had broken the law by opening his car door without his permission.

{¶ 6}    Kristin testified, "[Jason's behavior that day] made me feel very scared and I honestly was standing there with him in my face wondering, you know, if he was gonna punch me or what was coming next.  And I've seen violence from him before.  He has never physically hit me before, but I have seen violence from him before."  According to Kristin, Jason physically abused a family pet, put doorknobs through walls, threw pillows across the room, and knocked over lights.  Before he moved out of the family home, Jason left her notes stating that he never wanted to see her again, that he had video and audio cameras and was monitoring everything she did, and that he was depressed.  Jason also had control over her cell phone records and was contacting people who appeared on her call logs.  Kristin testified Jason directed violence and anger towards her and his actions made her "feel very concerned for [her] safety" as she "[didn't] know what he's capable of."  She stated that she "[p]otentially, yes" believed she would be in danger if the DVCPO was not granted.  Finally, on cross-examination, she testified that other than pushing her twice on November 5, 2017, Jason did not make any threats of violence towards her.

{¶ 7}    Kristin presented testimony from her neighbor, Melissa Haller, who witnessed a

portion of the November 5, 2017 incident. Haller testified that she and her son were sitting in her garage watching the thunderstorm on November 5, 2017, when they heard Jason honking his vehicle's horn "continuously, obnoxiously, for at least 10 minutes." A little bit later, Haller heard hollering and screaming coming from Kristin's driveway. She looked around her garage and saw Jason "in [Kristin's] face but towering over her, pointing in her face, screaming." Haller testified Jason was "very aggressive" and "very threatening," and Kristin appeared scared. Haller thought Jason was going to hurt Kristin, so she grabbed her cellphone, pressed 9-1-1, and prepared to hit "call," before walking next door and telling Jason that he needed to "get out of [Kristin's] face" or she would call the police. Haller stated Jason continued yelling while the children were removed from his vehicle and he threw the children's belongings on the lawn before he eventually left Kristin's home. Haller did not hear Jason make any specific threats towards Kristin.

{¶ 8} Jason's version of events differed from Kristin's and Haller's. Jason stated that when Kristin did not come to his vehicle to remove the children, he only beeped his horn "on and off" for two minutes. He also stated that it was Kristin's actions on November 5, 2017 that were threatening, not his own actions. Jason explained that when Kristin approached his vehicle and opened his driver-side door, it "made [him] feel very threatened." He stated that while Kristin stood in between the door and car, she "exchang[ed] * * * her thoughts on [their] divorce case, as well as whether or not [he] was going to be a father," which caused him to feel intimidated. Jason therefore "brushed [Kristin's] arm away" in an unsuccessful attempt to close his door. He then got out of the vehicle and, in that process, "may have brushed [against] Kristin." He denied that he was angry with Kristin, that he towered over her while screaming at her, or that he pushed Kristin backwards or forcibly moved her in any way. He also denied making any threats towards her. Finally, he denied that he threw the children's belongings on the wet yard, stating that the children's belongings were thrown at the front

- 4 -

door and that he did not know whose belongings he tossed on the yard – he just knew "they weren't the children's." On cross-examination he admitted he had accessed Kristin's telephone call logs and contacted her friends and acquaintances, but stated he did not use a false number or "ghost call" these individuals. He also admitted he had seen a counselor and had been prescribed medication for depression and anxiety but had stopped taking his medications in September 2017.

{¶ 9} Following Jason's testimony, the magistrate took the matter under advisement. On January 2, 2018, the magistrate granted Kristin a DVCPO, finding that Jason, by threat of force, had placed Kristin in fear of imminent serious physical harm. The trial court adopted the magistrate's decision that same day. Jason filed an objection, arguing that Kristin failed to prove he placed her in imminent serious physical harm as he "never made any physical (or other) threat" towards her. The trial court overruled Jason's objection, noting that the magistrate found Kristin and Haller credible and that the "[m]agistrate's decision is complete and is based on sound reasoning."

{¶ 10} Jason timely appealed, raising two assignments of error. As they are related, we will address the assignments of error together.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED IN ADOPTING THE MAGISTRATE'S DECISION AS THE DECISION IS, ON ITS FACE, CONTRARY TO LAW.

{¶ 13} Assignment of Error No. 2:

{¶ 14} THE TRIAL COURT'S FINDING THAT APPELLANT HAD COMMITTED DOMESTIC VIOLENCE PURSUANT TO O.R.C. 3113.31(A)(1)(b) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 15} In his first assignment of error, Jason contends that both the magistrate's decision and the trial court's decision are "on their face, contrary to law" as the magistrate's

decision, as approved and adopted by the trial court, failed to satisfy the requirements of R.C. 3113.31(A)(1)(b). Specifically, Jason argues the magistrate's finding that Kristin was "concerned and "fearful" of Jason and the trial court's finding that Jason's "actions and demeanor were aggressive and very threatening" are not findings that support a determination that Jason, by threat of force, placed Kristin in fear of imminent serious physical harm. In his second assignment of error, Jason challenges the weight of the evidence supporting the trial court's decision, arguing "there was no expressed or implied threat of force on the date of [the] altercation" and, even if there was, there was no evidence that Kristin had a reasonable fear of imminent serious physical harm.

{¶ 16} The procedures governing civil protection orders are set forth in Civ.R. 65.1. According to Civ.R. 65.1(F)(3), civil protection petitions may be referred to a magistrate for determination, but "[a] magistrate's denial or granting of a protection order after full hearing * * * does not constitute a magistrate's order or a magistrate's decision under Civ.R. 53(D)(2) or (3) and is not subject to the requirements of those rules." Civ.R. 65.1(F)(3)(b).

{¶ 17} A magistrate's order granting a protection order after a full hearing is not effective unless adopted by the trial court. Civ.R. 65.1(F)(3)(c)(i). A trial court may only adopt the magistrate's grant or denial of a protection order "upon review of the order and a determination that there is no error of law or other defect evident on the face of the order." Civ.R. 65.1(F)(3)(c)(ii). *See also Wulf v. Opp*, 12th Dist. Clermont No. CA2014-10-074, 2015-Ohio-3285, ¶ 17. A party may then file written objections "to a *court's* adoption, modification, or rejection of a magistrate's denial or granting of a protection order after a full hearing * * * within fourteen days of the court's filing of the order." (Emphasis added.) Civ.R. 65.1(F)(3)(d)(i).[1] A party must timely file objections prior to filing an appeal. Civ.R. 65.1(G).

---

1. Unlike in Civ.R. 53, where a party files objections to a magistrate's decision, a party files objections under Civ.R. 65.1(F)(3)(d)(i) to the *trial court's* adoption, modification, or rejection of a magistrate's grant or denial of a

The objecting party "has the burden of showing that an error of law or other defect is evident on the face of the order, or that the credible evidence of record is insufficient to support the granting or denial of the protection order, or that the magistrate abused the magistrate's discretion in including or failing to include specific terms in the protection order." Civ.R. 65.1(F)(3)(d)(iii).

{¶ 18} Kristin was granted a protection order in accordance with R.C. 3113.31. Pursuant to that statute, in order to grant a DVCPO, a "trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus. For the purpose of this case, domestic violence means "[p]lacing another person by the threat of force in fear of imminent serious physical harm * * *." R.C. 3113.31(A)(1)(b).

{¶ 19} "Under R.C. 3113.31, the threat of force must place a party in fear of both imminent and serious physical harm." *Partin v. Morrison*, 12th Dist. Brown No. CA2015-01-003, 2015-Ohio-4740, ¶ 11. "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "Serious physical harm" includes any physical harm that "carries a substantial risk of death" or that involves "some permanent incapacity * * * or some temporary, substantial incapacity," "some permanent disfigurement * * * or some temporary, serious disfigurement," or "acute pain of such duration as to result in substantial suffering or * * * any degree of prolonged or intractable pain." R.C. 2901.01(A)(5). "Imminent" means "on the point of happening," "ready to take place," "near at hand," "impending" and "hanging threateningly over one's head."

---

civil protection order. *See Wulf v. Opp*, 12th Dist. Clermont No. CA2014-10-074, 2015-Ohio-3285, ¶ 17; *Heimann v. Heekin*, 1st Dist. Hamilton No. C-130613, 2014-Ohio-4276, ¶ 7; *Isna v. Isna*, 2d Dist. Montgomery No. 26909, 2016-Ohio-7425, ¶ 26; *J.S. v. D.E.*, 7th Dist. Mahoning No. 17 MA 0032, 2017-Ohio-7507, ¶ 15; *Martin v. Dockter*, 10th Dist. Franklin Nos. 17AP-261 and 17AP-534, 2018-Ohio-858, ¶ 7.

*Bargar v. Kirby*, 12th Dist. Butler No. CA2010-12-334, 2011-Ohio-4904, ¶ 19. "'Imminent' does not mean that 'the offender carry out the threat immediately or be in the process of carrying it out.'" *Id.*

{¶ 20}   Threats of violence constitute domestic violence under R.C. 3113.31 if the fear resulting from those threats is reasonable. *McGuire v. Sprinkle*, 12th Dist. Warren CA2006-06-069, 2007-Ohio-2705, ¶ 15. "'The reasonableness of the fear should be determined with reference to the history between the petitioner and the [respondent].'" *Hyde v. Smith*, 12th Dist. Butler No. CA2014-09-193, 2015-Ohio-1701, ¶ 12, quoting *Gatt v. Gatt*, 9th Dist. Medina No. 3217-M, 2002-Ohio-1749, ¶ 7. However, in order to grant a civil protection order, past acts alone are not enough; there must be some evidence of current domestic violence, as set forth in the statute. *Partin* at ¶ 11.

{¶ 21}   "A trial court's decision to grant or deny a DVCPO will not be reversed where such decision is supported by the manifest weight of the evidence." *Barrett v. Barrett*, 12th Dist. Warren No. CA2016-04-033, 2017-Ohio-250, ¶ 19. Under a manifest weight challenge, a judgment will not be reversed as long as the judgment is supported by some competent, credible evidence going to all essential elements of the case. *Caramico v. Caramico*, 12th Dist. Clermont No. CA2015-03-025, 2015-Ohio-4232, ¶ 26. "The appellate court must be guided by a presumption that the trial court's factual findings are correct because the trial judge is best able to view the witnesses and observe their demeanor and use these observations in weighing the credibility of the proffered testimony." *Barrett* at ¶ 19, citing *McBride v. McBride*, 12th Dist. Butler No. CA2011-03-061, 2012-Ohio-2146, ¶ 11.

{¶ 22}   We find that the trial court did not err in adopting the magistrate's decision granting the DVCPO as there was no error of law or other defect evident on the face of the decision. Moreover, a review of the record demonstrates that competent and credible evidence supports the court's decision to grant the protection order. The magistrate heard

testimony from Kristin that on November 5, 2017, Jason pushed her twice, "got in her face" to yell and scream at her, and threw personal belongings onto her yard. Kristin stated that although Jason had not previously physically assaulted her, she had seen him act violently when he physically abused a dog for over a year, put doorknobs through walls, threw pillows across the room, and knocked over lights. Jason's actions on November 5, 2017 caused Kristin to become "very scared" and "very concerned for [her] safety." Kristin questioned whether he was going to punch her, and she stated she "[didn't] know what he was capable of" but felt she would be danger if a protection order was not granted. Kristin testified that in addition to Jason's actions on November 5, 2017, Jason had left her notes stating that he never wanted to see her again and was monitoring everything she did with video and audio cameras, and he began contacting individuals who appeared on her telephone call log – behavior which added to Kristin's fear for her safety.

{¶ 23} Haller's testimony about the events that transpired on November 5, 2017 corroborated Kristin's testimony. Haller stated Jason was "in [Kristin's] face * * * towering over her, pointing in her face, screaming." Haller testified Jason's demeanor was "very aggressive" and so threatening that she found it necessary to predial 9-1-1 and have her cellphone in her hand when she approached Jason to tell him that she would call the police if he did not "get out of [Kristin's] face." Haller and Kristin's testimony provide competent and credible evidence that Jason's aggressive conduct in pushing Kristin, towering over her, and pointing and screaming in her face was a threat of force. Furthermore, Kristin's testimony establishes that she was in fear of imminent physical harm and that such fear was reasonable under the circumstances.

{¶ 24} Although Jason disputes that he pushed Kristin, towered over her, or threatened her in any way on November 5, 2017, the magistrate found Jason's testimony was not credible. The magistrate specifically found Jason's threatening actions were

"concern[ing]," that Kristin's resulting fear was credible, and "that Respondent Jason * * * placed Petitioner Kristin * * * in imminent serious physical harm pursuant to [R.C.] 3113.31(A)(1)(b)."[2] The magistrate, as the trier of fact, was in the best position to determine the credibility of the witnesses, and this court must accord due deference to her credibility determinations. *Caramico*, 2015-Ohio-4232 at ¶ 29; *Dunn v. Clark*, 12th Dist. Warren No. CA2015-06-055, 2016-Ohio-641, ¶ 16. As this court has previously stated, "[i]t is not the role of the appellate court to substitute its own determination of credibility in place of the [trier of fact]." *Weismuller v. Polston*, 12th Dist. Brown CA2011-06-014, 2012-Ohio-1476, ¶ 24.

{¶ 25} Accordingly, for the reasons set forth above, we find that the trial court did not err in adopting the magistrate's decision as the decision was not, on its face, contrary to law and the decision to grant the DVCPO was supported by the manifest weight of the evidence. Jason's first and second assignments of error are therefore overruled.

{¶ 26} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.

---

2. Jason takes issue with the language used by the magistrate in her decision, arguing that "[a] finding that one is 'concerned' or 'fearful' is not a finding that one is in fear of imminent serious physical harm as the statute requires." However, the magistrate's decision, when read as a whole, clearly indicates that the Jason's actions on November 5, 2017 placed Kristin in fear of imminent serious physical harm, thereby meeting the requirements set forth in R.C. 3113.31(A)(1)(b) for the issuance of a DVCPO.