[Cite as *Gambrel v. Segal*, 2025-Ohio-215.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |  |
|---|---|---|---|
| EDWARD GAMBREL, | : | | |
| Appellee, | : | CASE NO. CA2024-04-028 | |
| | : | O P I N I O N | |
| - vs - | | 1/27/2025 | |
| | : | | |
| SARA ELIZABETH SEGAL, | : | | |
| Appellant. | : | | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2024 DRH 00010

Joseph G. Tekulve, for appellee.

Alex van der Zee, for appellant.

**PIPER, J.**

{¶ 1} Appellant, Sara Elizabeth Segal, appeals the decision of the Clermont County Court of Common Pleas, Domestic Relations Division, granting a dating violence civil protection order ("DTCPO") to her ex-boyfriend, appellee, Edward Gambrel. For the reasons outlined below, Segal's appeal is dismissed.

**Facts and Procedural History**

{¶ 2} On January 3, 2024, Gambrel filed a petition for a DTCPO against his ex-

girlfriend, Segal. To support his petition, Gambrel initially alleged:

> On the night of 11/22/23 she was drunk, there was an argument and I asked her to leave. She threw a glass and broke it on the floor and exited my house. I followed her to her car to return unwanted gifts, put them in her car and went back inside. She returned with the gifts, attempted to kick my door in and threw them at me when I opened the door. I told her to leave and she barged in and hit me twice in the face. I told her again to leave and she refused. I actually left my own home to get away from her. I had to have a friend drive by my house later to make sure she had left.

**{¶ 3}** Gambrel also alleged that Segal had "stalked" both him and his children, wrote a "nasty" email to his psychiatrist "trashing" him personally, called him numerous times within just a few minutes on multiple different days, and wrote him a "horrible" text message. Gambrel further alleged that Segal had posted a message on Facebook "trashing" him as a person, as a man, and as a father. This was in addition to Gambrel alleging that Segal is:

> unstable at best, very erratic. . . . She's manipulative, controlling, narcissistic, and nothing is her fault. It's caused me to be unable to eat, sleep, work or live a normal life. I'm constantly checking my doors, my car, and checking to see if she's around when I leave work or home.

Shortly after receiving Gambrel's petition, the domestic relations court granted Gambrel an ex parte DTCPO against Segal.

**{¶ 4}** On March 22, 2024, the domestic relations court held a full hearing on the matter. A domestic relations court magistrate presided over the hearing. During the hearing, the magistrate heard testimony and took evidence from a total of three witnesses. These three witnesses included both Segal and Gambrel. Following this hearing, the magistrate issued an order granting Gambrel a DTCPO against Segal for a period of two years. In so holding, the magistrate stated, in pertinent part, the following:

> The parties were in a tumultuous, "on again, off again" relationship between August 2022 and December 2023.

[Segal] has a history of pursuing and monitoring [Gambrel] when the parties break up. In February 2023, after breaking up, [Segal] went to [Gambrel's] home and began kicking his glass door. After a breakup in April 2023, [Segal] left a letter on [Gambrel's] truck while [Gambrel] and his children were at Scene 75. The next day, [Segal] left another note *in* [Gambrel's] truck. [Gambrel] had no contact with [Segal], per a "cease and desist" letter from [Segal's] attorney, until November 3, 2023. On November 3, 2023, [Segal] called [Gambrel] five times in a fifteen minute period. [Gambrel] responded and the parties rekindled their relationship. On November 22, 2023, the parties argued at [Gambrel's] home. [Gambrel] told [Segal] to leave his home several times. [Segal] refused to leave. [Segal] smashed a glass on [Gambrel's] floor. [Segal] also hit [Gambrel]. The parties attempted to reconcile for approximately one week. On December 7, 2023, the parties broke up a final time.

(Emphasis in original.)

**{¶ 5}** The magistrate also stated:

On December 8, 2023, [Segal] sent a lengthy email to [Gambrel's] therapist and copied [Gambrel] on the email. In this email, [Segal] claimed [Gambrel] abused his former wife ([Gambrel's] former wife ended her own life). [Segal] ends her December 8th email asking [Gambrel] to "come back to her… or never contact [her] again." [Gambrel] did not respond to the email. On December 9, 2023, [Segal] commented on a post in a Facebook group called "Are We Dating The Same Guy." [Segal's] comments included allegations that [Gambrel] was the reason his wife "committed suicide" and suggested that [Gambrel] mistreats his children. Also on December 9, 2023, [Segal] sent another email to [Gambrel's] therapist (copying [Gambrel]) complaining of [Gambrel's] treatment of her and diagnosing [Gambrel] as a "narcissist." [Gambrel] did not respond to the email.

**{¶ 6}** Continuing, the magistrate stated:

On December 12, 2023, [Segal] sent another email to [Gambrel's] therapist (copying [Gambrel]) berating [Gambrel], but ending the email by saying, "I love you, and I can't say that hard enough." [Gambrel] did not respond to the email. On December 16, [Segal] called [Gambrel] four times in a span of three minutes. [Gambrel] did not answer. On December 20, 2023, [Segal] sent [Gambrel] an email letting [Gambrel] know what was posted on social media. [Gambrel] did not respond. On December 23, 2023, [Segal] called [Gambrel] six times.

[Gambrel] did not answer. [Also on] December 23, 2023, [Segal] sent yet another email to [Gambrel], this time, sending it to two email addresses to be sure [Gambrel] received the email. [Gambrel] did not respond to either email. On December 30, 2023, [Segal] again sent emails to both of [Gambrel's] email addresses insisting [Gambrel] abused his former wife "to death" and that [Gambrel's] son was "quite literally dying inside like his mother."

{¶ 7} Concluding, the magistrate determined that Segal's unrelenting pursuit of Gambrel had caused Gambrel to "fear for his mental health." This included Gambrel worrying that Segal "may become physical again." This is in addition to the magistrate finding Gambrel "worries daily about how far [Segal] will take things" and that, as a single parent, Gambrel "is now locking his doors and feels he must always look over his shoulder." The domestic relations court adopted the magistrate's decision in its entirety.

{¶ 8} Segal did not file an objection to the domestic relations court's adoption of the magistrate's decision as required by Civ.R. 65.1(G). Rather, on April 16, 2024, Segal filed a notice of appeal. Following briefing, oral argument was held before this court on November 12, 2024. Supplemental briefing was then submitted to this court by the parties on December 2, 2024 and December 20, 2024, respectively. Segal's appeal now properly before this court for decision, Segal has raised one assignment of error for review.

**Segal's Appeal and Single Assignment of Error for Review**

{¶ 9} THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING THE RESPONDENT A CIVIL PROTECTION ORDER.

{¶ 10} In her single assignment of error, Segal challenges the domestic relations court's decision to grant a DTCPO to Gambrel. Segal does this by raising three issues for this court's consideration. Initially, Segal argues the domestic relations court erred when it found Gambrel was in "danger" of her. Segal next argues the domestic relations court erred when it found Gambrel was a "victim." Finally, Segal argues the domestic

relations court erred when it found the DTCPO was "equitable, fair, and necessary" to protect Gambrel from her.

{¶ 11} However, as noted above, Segal never filed an objection to the domestic relations court adopting the magistrate's decision as required by Civ.R. 65.1(G). Pursuant to Civ.R. 65.1(G), "a party must timely file objections prior to filing an appeal." *Alomari v. Almajali*, 2020-Ohio-4349, ¶ 56 (12th Dist.). Specifically, Civ.R. 65.1(G) provides:

> Notwithstanding the provisions of any other rule, an order entered by the court under division (F)(3)(c) or division (F)(3)(e) of this rule is a final, appealable order. However, *a party must timely file objections to such an order under division (F)(3)(d) of this rule prior to filing an appeal*, and the timely filing of such objections shall stay the running of the time for appeal until the filing of the court's ruling on the objections.

(Emphasis added.) This requirement is grounded in two key principles: (1) to promote the fair administration of justice, including affording the domestic relations court an opportunity to review the transcript and address any insufficiency of evidence or abuse of discretion that would render the order or a term of the order unjust; and (2) to create a more robust record upon which the appeal may proceed. *Alomari* at ¶ 57, citing 2016 Staff Note to Civ.R. 65.1.

{¶ 12} Given the plain language of Civ.R. 65.1(G), the filing of an objection to the domestic relations court's decision is mandatory. *N.L. v. I.L.*, 2024-Ohio-4476, ¶ 7 (9th Dist.). Therefore, because Civ.R. 65.1(G) required Segal to file an objection with the domestic relations court prior to her filing her notice of appeal, something which she did not do, Segal is not permitted to appeal the domestic relations court's adoption of the magistrate's decision in this case. This is a well-established principle that this court has reiterated numerous times over the past several years. *See, e.g., Becker v. Harnar*, 2020-Ohio-3234, ¶ 12 (12th Dist.) (respondent was not permitted to appeal the trial court's order

adopting a magistrate's decision granting a civil stalking protection order against him where respondent did not file objections to the trial court's order as required by Civ.R. 65.1[G]); *see also White v. Ferrell*, 2020-Ohio-970, ¶ 12 (12th Dist.) ("[p]rior to filing an appeal, a party must timely file objections to a court's adoption of a magistrate's denial or granting of a protection order"); *Pinkston v. White*, 2019-Ohio-5165, ¶ 12 (12th Dist.) ("[a] party must timely file objections prior to filing an appeal"); *Tilbrook v. Francis*, 2018-Ohio-4064, ¶ 16 (12th Dist.) (same); *McVean v. McVean*, 2018-Ohio-4062, ¶ 17 (12th Dist.) (same).

{¶ 13} Other courts have held the same. *See, e.g., P.F. v. A.H.*, 2024-Ohio-2649, ¶ 6 (2d Dist.) ("written objections to the trial court's decision are mandatory for consideration on appeal"); *Danison v. Blinco*, 2019-Ohio-2767, ¶ 8 (3d Dist.) ("parties wishing to object to the trial court's adoption of the magistrate's decision must timely file objections with the trial court [in accordance with Civ.R. 65.1(G)] as failure to do so waives their arguments regarding the trial court's adoption of the magistrate's decision"); *Dietrich v. Dietrich*, 2023-Ohio-4822, ¶ 36 (4th Dist.) ("[t]he language of Civ.R. 65.1[G] is mandatory and a failure to timely file objections to the granting or dismissing of a civil protection order, prior to appeal, is a violation of Civ.R. 65.1[G]"); *H.W. v. M.L.S.*, 2022-Ohio-3840, ¶ 15 (5th Dist.) (holding that "without timely filed objections under Civ.R. 65.1 [G], [a]ppellant may not challenge the trial court's decision on appeal"); and *P.N. v. A.M.*, 2021-Ohio-1163, ¶ 10 (7th Dist.) ("in the absence of timely-filed objections pursuant to Civ.R. 65.1[G], we lack jurisdiction to hear this case").

## Conclusion

{¶ 14} For the reasons outlined above, although we understand Segal's concerns expressed in her supplemental brief, because compliance with Civ.R. 65.1(G) is mandatory, Segal's single assignment of error is dismissed. In so doing, we note that

Civ.R. 65.1(F)(3)(b) specifically states that "[a] magistrate's denial or granting of a protection order after full hearing under this division does not constitute a magistrate's order or a magistrate's decision under Civ.R. 53(D)(2) or (3) and is not subject to the requirements of those rules." This would include, for instance, the mandate set forth under Civ.R. 53(D)(3)(a)(iii) that requires a magistrate's decision be identified as such in the decision's caption and to "indicate conspicuously" that a party shall not assign as error on appeal the trial court's adoption of any factual finding or legal conclusion "unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b)."

{¶ 15} Appeal dismissed.

BYRNE, P.J., and HENDRICKSON, J., concur.