[Cite as *Crawford v. Brandon*, 2014-Ohio-3659.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| LACRISHA CRAWFORD, | : | |
| Petitioner-Appellee, | : | CASE NOS. CA2013-08-150<br>CA2013-08-151 |
| - vs - | : | O P I N I O N<br>8/25/2014 |
|  | : | |
| DICKIE D. BRANDON, | : | |
| Petitioner-Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DV13-07-0588

Lacrisha Crawford, 2005 Monarch Drive, Middletown, Ohio 45044, petitioner-appellee, pro se

Repper, Pagan & Cook, Ltd., Christopher J. Pagan, 1501 First Avenue, Middletown, Ohio 45044, for petitioner-appellant

**S. POWELL, J.**

{¶ 1} Petitioner-appellant, Dickie D. Brandon, appeals from the decision of the Butler County Court of Common Pleas, Domestic Relations Division, granting petitioner-appellee, Lacrisha Crawford, a domestic violence civil protection order (DVCPO) against him. Brandon also appeals from the trial court's decision denying his request for a DVCPO against Crawford. For the reasons outlined below, we affirm the trial court's decision.

{¶ 2} On the morning of July 10, 2013, Crawford filed a petition for a DVCPO against

Brandon, the father of her then seven-year-old daughter.  Later that afternoon, Brandon also filed a petition for a DVCPO against Crawford.  After holding a hearing on the competing petitions, a magistrate granted both parties an ex parte temporary DVCPO against one another.  The magistrate then scheduled the matter for a full hearing 14 days later on July 24, 2013.  Following this hearing, and after hearing testimony from both Crawford and Brandon, the trial court granted Crawford's request for a DVCPO against Brandon, but denied Brandon's request for the same against Crawford.  Brandon now appeals from the trial court's decision, raising two assignments of error for review.

{¶ 3}   Assignment of Error No. 1:

{¶ 4}   THE TRIAL COURT ERRED WHEN IT GRANTED APPELLEE'S PETITION FOR A CIVIL PROTECTION ORDER AND DENIED APPELLANT'S PETITION FOR A CIVIL PROTECTION ORDER.

{¶ 5}   In his first assignment of error, Brandon argues the trial court erred by granting Crawford's request for a DVCPO against him while at the same time denying his own request for a DVCPO against her.  We disagree.

{¶ 6}   A petition for a DVCPO is governed by R.C. 3113.31.  *Wolfe v. Wolfe*, 5th Dist. Stark No. 2013CA00196, 2014-Ohio-2159, ¶ 7.  Pursuant to that statute, in order to obtain a DVCPO, "the petitioner must prove by a preponderance of the evidence that the respondent has engaged in an act of domestic violence against petitioner, petitioner's family, or petitioner's household members."  *McBride v. McBride*, 12th Dist. Butler No. CA2011-03-061, 2012-Ohio-2146, ¶ 12, citing *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus.  As defined by R.C. 3113.31(A)(1), the phrase "domestic violence" means the occurrence of one or more of the following acts against a family or household member:

> (a)  Attempting to cause or recklessly causing bodily injury;
>
> (b)  Placing another person by the threat of force in fear of

imminent serious physical harm or committing a violation of section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code;

(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

(d) Committing a sexually oriented offense.

{¶ 7} "A trial court's decision to deny or grant a CPO will not be reversed where such decision is supported by the manifest weight of the evidence."[1] *Glancy v. Spradley*, 12th Dist. Butler No. CA2012-02-024, 2012-Ohio-4224, ¶ 8. Under a manifest weight challenge, this court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Schneble v. Stark*, 12th Dist. Warren Nos. CA2011-06-063 and CA2011-06-064, 2012-Ohio-3130, ¶ 67; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. A judgment will not be reversed "as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case." *Asburn v. Roth*, 12th Dist. Butler Nos. CA2006-03-054 and CA2006-03-070, 2007-Ohio-2995, ¶ 26, citing *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶ 8} At trial, Crawford testified that on the evening of July 9, 2013, Brandon chased her through the streets of Middletown, Butler County, Ohio, as she was driving around town with her friend, Aaron Nichols. As Crawford testified:

---

1. It should be noted, Brandon argues that because Crawford did not file an appellate brief in this matter, App.R. 18(C) "ostensibly supplies the appropriate standard-of-review." That rule, however, merely allows this court to accept Brandon's statement of the facts and issues as correct and reverse the judgment if his brief reasonably appears to sustain such action. Thus, whether to accept Brandon's assertions contained within his appellate brief is purely discretionary. Moreover, because he is challenging the trial court's decision to grant Crawford a DVCPO against him, we disagree with Brandon's claim that App.18(C) supplants the now well-established manifest weight of the evidence standard of review.

> On the 9th of July sometime in the evening, I had [Nichols] in the car with me. We pulled up at the traffic light at, uh, University and Martin Luther King Boulevard at a red light, where I was on one side and [Brandon] was on the other. [Brandon] then got out of the vehicle * * * at the red light, tried to open my car door, which caused me to go through the red light, and he proceeded to get in his car and chase me through town. I continued on to drop [Nichols] off and we pulled up in front of the destination, which was on Barbara Drive, Mr. Brandon came into that cul-de-sac, or circle, there's a street runs off, trying to run [Nichols] over, constantly running back and forth between his vehicle.

Continuing, Crawford testified that during this altercation:

> [Brandon] pulled out a weapon that he carries in his car. He pulled it out, he tried to run [Nichols] over twice in that yard, uh, pulling on my car doors, banging on the windows. * * * He pulled [the gun] out; he kept going back and forth to the truck 'cause he was jumping in and out. I don't know. But what I do know is when he did pull out the gun, he was calling [Nichols] to the street like, "Come out here you B, you drug dealer, you motherf****r, come out here, come out here, come out here," where he was standing in the middle of the street. I asked the girl whose house it was to call the police because I didn't want to stay. I threw my car into reverse, which made him run into his vehicle. I backed up an entire city block trying to get away from this man. And then from that point, I went, uh, to my house, gathered my kids, because [Brandon's] son called and said like, "[Crawford] I think you need to leave because my dad is stating that he's gonna do harm to you and himself." I gathered my children up and we went and stayed in a hotel room for the night.

{¶ 9} Brandon, however, testified there was never any car chase that evening. Rather, Brandon testified he actually went to Crawford's house to visit his daughter with his friend, Patrick Hill. According to Brandon, upon entering the house he saw Nichols, a "known drug dealer," smoking marijuana in front of his daughter. Brandon also testified he saw drug paraphernalia. As Brandon testified, "I was very distraught, the fact that, uh, when I came to the house, the house smelled like marijuana and, uh, I seen drug paraphernalia in front of my daughter." Brandon further testified that it was actually Crawford who threated to have him arrested if he did not leave, and that Nichols threatened to kill him.

{¶ 10} In addition to the testimony regarding the alleged car chase, Crawford testified

she was terrified of Brandon because he had previously made several threats that he was going to kill her and himself. Crawford further testified that approximately one month before, on June 11, 2013, Brandon had entered her house unannounced while she was having her locks changed. Once inside, Crawford claims Brandon punctured a hole in her air conditioner, and stole her car keys, as well as her dog. Brandon denied all of these allegations.

{¶ 11} The trial court also heard testimony from Brandon regarding an alleged incident at his workplace on the afternoon of July 10, 2013, shortly after Crawford had received her ex parte temporary DVCPO against him. As Brandon testified:

> [BRANDON]: I was actually eating lunch. I was eating lunch at my job, uh, I seen a white Camaro come into the [AK Steel] parking lot. Uh, and as I noticed her coming through the gate, I observed her come through the gate, hop out the car toward my vehicle, and then she hopped back in the car, at which point, I call[ed] AK security, I block[ed] the road off, and I requested that the AK security call his supervisor and Middletown Police Department.
>
> [BRANDON'S TRIAL COUNSEL]: All right. And did, uh, AK security respond to your request?
>
> [BRANDON]: Yeah, AK, uh, they responded to my request.
>
> [BRANDON'S TRIAL COUNSEL]: Did they perform an investigation?
>
> [BRANDON]: They performed an investigation. They, uh, went and found that my tires was slashed. Uh, I asked –
>
> [TRIAL COURT]: Did you observe your tires slashed?
>
> [BRANDON]: Yes, I did.
>
> [TRIAL COURT]: Okay.
>
> [BRANDON'S TRIAL COUNSEL]: And what about, uh, markings on the window; were there, uh, observations by you with AK Steel security present –
>
> [BRANDON]: Yes.

[BRANDON'S TRIAL COUNSEL]: -- on your window?

[BRANDON]: On my door.

[BRANDON'S TRIAL COUNSEL]: On your door?

[BRANDON]: On my door, paint scratched.

{¶ 12} When asked about the July 10, 2013 incident, Crawford admitted that she went to Brandon's workplace shortly after she had received her ex parte temporary DVCPO, but claims she did not slash Brandon's tires or scratch his door. In fact, when explicitly asked if she slashed Brandon's tires, Crawford testified "No." Rather, Crawford testified:

> I went to his place of employment to have him, one, served [with the ex parte temporary DVCPO]; two, to feel secure to enter my house, for him to know he couldn't be around me; and, three, because I took a two-week leave of absence from work to head out of town to my mother's house; and I needed to go home and pack where I felt – where would feel secure enough in my house, knowing that he had been served and was at work.

{¶ 13} After both parties rested, the trial court then entered its decision. Specifically, in regards to Crawford's request for a DVCPO against Brandon, the trial court stated:

> I've assessed the credibility of the witnesses and I'm not considering, uh, the weapon situation with [Nichols]. [Nichols] can go upstairs and get a Protection Order or a Restraining Order to file charges. Uh, I am, however, -- I find [Crawford's] testimony credible about the actions at the stop at the – uh, on the road, and the threats against her, uh, and that she believed them to be serious, and that it was reasonable for her to believe them to be serious, uh, and that her testimony is credible as to [Brandon's] actions in that cul-de-sac in front of her friend's house. I'm not considering [Nichols'] behavior as domestic violence, but I am finding that Mr. Brandon, uh, committed domestic violence based upon that testimony. I don't find [Brandon's] testimony credible that he was not at [Crawford's] home that day.

{¶ 14} However, in regards to Brandon's request for a DVCPO against Crawford, the trial court stated:

> Mr. Brandon testified to, uh, physical damage to his truck. He

> absolutely can proceed on criminal damaging charges if he chooses to do so or damages in Civil Court. However, this is a very narrow statute and he did not testify or give evidence regarding any, uh, reasonably – or any, any significant threat made by, uh, Ms. Crawford to him against him and didn't give any testimony regarding actual domestic violence. So I'm going to dismiss this *ex parte*. Again, there are other legal options that you can take, uh, if you have witnesses that observed her, uh, damaging your truck.

(Emphasis sic.)

{¶ 15} After a thorough review of the record, we find the trial court's decision to grant Crawford's request for a DVCPO against Brandon was supported by the manifest weight of the evidence. As outlined above, the trial court heard testimony from Crawford that Brandon chased her throughout town on the evening of July 9, 2013 as she was driving with her friend Nichols. The trial court also heard testimony from Crawford that Brandon had entered her house unannounced on June 11, 2013 while she was getting her locks changed, punctured her air conditioner, and stole her car keys, as well as her dog. Crawford further testified that Brandon had made threats to kill her and himself. Although Brandon denied these allegations and testified to a vastly different account of these events, the trial court, as the trier of fact, was best equipped to determine which version was more credible and substantiated by the evidence. "It is not the role of the appellate court to substitute its own determination of credibility in place of the trial court." *Weismuller v. Polston*, 12th Dist. Brown No. CA2011-06-014, 2012-Ohio-1476, ¶ 24.

{¶ 16} We also find the trial court's decision to deny Brandon's request for a DVCPO against Crawford was supported by the manifest weight of the evidence. Again, after assessing their credibility, the trial court found Crawford's version of events to be more credible and substantiated by the evidence. In addition, as it relates to Brandon's claims that Crawford slashed his tires and chipped the paint on his truck, we find the trial court correctly concluded that any such claim was better suited for a criminal damaging charge or a civil

claim for damages as opposed to a request for a DVCPO. Just as the trial court found, "there are other legal options that you can take * * * if you have witnesses that observed her * * * damaging your truck."

{¶ 17} Nevertheless, Brandon argues the trial court's decision to grant Crawford's request for a DVCPO must be reversed because it was based solely on Crawford's testimony "with no additional evidence of any kind presented to corroborate her story." The Ohio Supreme Court, however, has expressly rejected the contention that corroborating eyewitness testimony or medical evidence must be presented to establish domestic violence by a preponderance of the evidence. *See Felton*, 79 Ohio St.3d at 44-45. In fact, as the Ohio Supreme Court specifically stated, "[o]ften the only evidence of domestic violence is the testimony of the victim." *Id.* Therefore, we find Crawford's testimony, standing alone, was sufficient to meet the preponderance of the evidence standard necessary to receive a DVCPO even without any additional evidence corroborating her story. *See Weismuller*, 2012-Ohio-1476 at ¶ 23 (finding appellant's testimony, if found credible, may be sufficient to meet the preponderance of the evidence standard). Brandon's argument to the contrary is without merit and overruled.

{¶ 18} Brandon also argues the trial court's decision granting Crawford a DVCPO against him must be reversed because his conduct was "mild" in comparison to other cases that this court has upheld on appeal. However, this is not argument by analogy. Moreover, even if we were to find any credence to Brandon's claim that his conduct was in fact "mild," the notion that one's behavior must rise to a level "more egregious" than the last is wholly without merit. "The General Assembly enacted the domestic violence statutes specifically to criminalize those activities commonly known as domestic violence and to authorize a court to issue protection orders designed to ensure the safety and protection of a complainant in a domestic violence case." *Felton*, 79 Ohio St.3d at 37. That is exactly what the trial court did

by granting Crawford's request for a DVCPO here. Brandon's argument otherwise is likewise without merit and overruled.

{¶ 19} Accordingly, as we find no merit to either of Brandon's claims advanced herein, Brandon's first assignment of error is overruled.

{¶ 20} Assignment of Error No. 2:

{¶ 21} THE TRIAL JUDGE ERRED IN ENFORCING A RULE REQUIRING DISCOVERY TO BE TRADED BETWEEN PARTIES FOURTEEN DAYS PRIOR TO THE FULL CPO HEARING.

{¶ 22} In his second assignment of error, Brandon initially argues the trial court erred by requiring discovery to be exchanged 14 days prior to the July 24, 2013 hearing. According to Brandon, this not only violated a variety of civil and local rules, but also his constitutional right to due process. Considering the parties both filed their petitions for a DVCPO on July 10, 2013, exactly 14 days before the full hearing was conducted, we do have some concerns regarding the strict enforcement of this discovery deadline. Any such concerns, however, are completely eliminated by a simple review of the record in this case.

{¶ 23} Brandon claims that "[a]t various times during testimony, the trial court judge alluded to this fourteen-day rule." This is simply false. Rather, the record reveals that Brandon was only once cautioned about providing evidence beyond the discovery deadline as it relates to a security report from Brandon's employer. Yet, even then, Brandon explicitly stated he was not offering the security report as evidence, but merely using it for impeachment purposes during his cross-examination of Crawford. As Brandon's trial counsel specifically stated:

[BRANDON'S TRIAL COUNSEL]: May I approach the witness?

[TRIAL COURT]: Uh-huh.

[BRANDON'S TRIAL COUNSEL]: All right. We'll mark this

- 9 -

Defense Exhibit A.  * * * You see a picture of a tire?

[CRAWFORD]:  It appears to be one.

[BRANDON'S TRIAL COUNSEL]:  Do you see a finger –

[CRAWFORD]:  I do.

[BRANDON'S TRIAL COUNSEL]:  -- next to a slash mark?

[CRAWFORD]:  Uh-huh.

[BRANDON'S TRIAL COUNSEL]: Okay.  Do you recognize this to be an AK Steel Security Report?

[CRAWFORD]:  I think so.

[TRIAL COURT]:  Has that been supplied to her 14 days prior?

[BRANDON'S TRIAL COUNSEL]:  I'm not gonna – I'm just crossing on it, I'm not gonna offer it.

[TRIAL COURT]:  Okay.

{¶ 24} As Brandon never moved to have this evidence admitted at trial, we find he simply did not suffer any resulting prejudice.  This is particularly true given the fact that the trial court allowed Brandon to continue his cross-examination of Crawford regarding the disputed security report without any further objection.  Brandon's arguments that the trial court somehow erred and violated his due process rights are therefore without merit and overruled.

{¶ 25} Next, Brandon argues the trial court erred by denying his request for a continuance.  Pursuant to Loc.R. DR 35, all requests for continuances from these matters should have been made at least three days prior to trial.  Brandon's request, however, came during trial and after Crawford had already testified.  Moreover, although Brandon claims the trial court ordered him to "move on" without addressing his request for a continuance, the record plainly reveals that it was actually Brandon's trial counsel who stated "Okay.  We can move on if you want" after the trial court addressed his request for a continuance at length.

The denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial court. *Campbell v. Campbell*, 12th Dist. Warren No. CA2009-04-039, 2009-Ohio-6238, ¶ 15. We find no abuse of that discretion here. Therefore, Brandon's argument that the trial court erred by denying his request for a continuance is also without merit and overruled.

{¶ 26} Accordingly, as we find no merit to any of Brandon's claims advanced herein, Brandon's second assignment of error is overruled.

{¶ 27} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.