[Cite as *McGrady v. Muench*, 2019-Ohio-2677.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| KELLY ANNE MCGRADY, | : | |
| Appellee, | : | CASE NO. CA2018-12-145 |
| | : | O P I N I O N |
| - vs - | | 7/1/2019 |
| | : | |
| CHRISTOPHER M. MUENCH, | : | |
| Appellant. | : | |


APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 18DV8251


The Bonecutter Firm, Brenda L. Bonecutter, 530 York Street, Newport, Kentucky 41071, for appellee

Pinales, Stachler, Young, & Burrell Co., LPA, Eric G. Eckes, 455 Delta Avenue, Suite 105, Cincinnati, Ohio 45226, for appellant


**S. POWELL, J.**

{¶ 1} Appellant, Christopher M. Muench, appeals the decision of the Warren County Court of Common Pleas, Domestic Relations Division, granting a domestic violence civil protection order ("DVCPO") to appellee, Kelly Anne McGrady. For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2} Muench and McGrady are the parents of one child, D.M., born on April 27, 2016. Muench and McGrady were never married. McGrady is D.M.'s sole legal custodian. Although ordered to pay child support, Muench has never requested custody nor has Muench ever requested any court ordered parenting time with D.M. However, although not provided with any court ordered parenting time, McGrady had nevertheless permitted Muench to visit D.M. on a fairly consistent basis. This was due in large part to McGrady and Muench's on-again-off-again romantic relationship in the year following D.M.'s birth.

{¶ 3} On May 1, 2018, approximately two years after D.M. was born, McGrady petitioned the domestic relations court for a DVCPO against Muench. In support of her petition, McGrady alleged that she had permitted Muench to take D.M. to a local restaurant for a belated birthday celebration. However, rather than taking D.M. to a restaurant, Muench instead took D.M. to his parents' house. Not wanting D.M. to be at Muench's parents' house due to her claims they had previously given D.M. sips of alcohol, McGrady went to the Muench house to retrieve her son from Muench and his family.

{¶ 4} Once at the Muench house, McGrady alleged Muench and his mother refused to return D.M. to her care. McGrady alleged Muench grabbed D.M. and "ran inside to lock [McGrady] away from [her] son." Undeterred by Muench's efforts to keep her away from her son, McGrady alleged a physical altercation took place between herself and Muench. During this scuffle, McGrady alleged Muench shoved her into the wall, placed her in a choke hold, lifted her off the ground, and forcibly removed her from the property. To this, McGrady alleged she "struck Muench in the face with her keys" and pleaded for him to release her from his choke hold.

{¶ 5} Due to her pleadings for Muench to release her from his choke hold, McGrady alleged Muench eventually let one of her arms free from his grasp. Once her arm was

released, McGrady called 9-1-1 and watched as Muench's friend "removed [his] hold and brought him inside." After the police arrived at the scene, McGrady alleged the "group" claimed she "broke in," "jumped" Muench, and struck him in the face. Due to their conflicting statements to police, McGrady alleged the police arrested her and took her to jail, thereby allowing D.M. to remain in Muench's care. Due to Muench and Muench's mother's efforts to avoid returning D.M. to McGrady, the record indicates D.M. remained in Muench's care for 15 days after this altercation occurred.

{¶ 6} Upon receiving McGrady's petition, the domestic relations court granted an ex parte DVCPO to McGrady. Several months later, on August 21, 2018, the matter proceeded to a full hearing held before a domestic relations court magistrate. During this hearing, the magistrate heard testimony from McGrady, Muench, Muench's mother, and two of Muench's friends/acquaintances. This included McGrady's testimony that Muench hit her with the door "over and over" while she was trying to retrieve D.M. from the Muench home. McGrady also testified Muench shoved her into the door frame several times and "picked [her] up in a choke hold and carried [her] down the stairs and down the sidewalk." This, according to McGrady's testimony, caused her to suffer injuries to her person and put her in fear of Muench. This fear was further exacerbated by the fact Muench had access to "a lot" of firearms stored in his parent's basement. Muench thereafter testified and acknowledged that he "owned" several semi-automatic rifles and "a handful of handguns."

{¶ 7} On August 24, 2018, the magistrate issued a decision granting a full DVCPO to McGrady. The magistrate based its decision upon finding the testimony offered by Muench and his supporting witnesses was "inconsistent at best." The magistrate instead found McGrady's testimony credible that Muench had repeatedly "struck [her] with a door to try to keep her from entering a home to recover [D.M.]" The magistrate also found credible McGrady's testimony that Muench had "shoved [her], then grabbed her, lifting her

off the ground, and removed her from the home's porch." This, as the magistrate found, caused McGrady to suffer physical harm to her person and placed McGrady in fear of additional bodily harm from Muench. The magistrate's decision set the DVCPO's expiration date for May 1, 2020, during which time Muench was ordered to surrender his firearms to the local authorities.

{¶ 8} On August 31, 2018, Muench filed objections to the magistrate's decision. In support, Muench argued the magistrate's decision was against the manifest weight of the evidence. Muench supported this claim by noting his testimony alleging McGrady was the "primary physical aggressor," whereas he was merely acting in self-defense. Muench also argued that it was improper for the magistrate to order him to surrender his firearms to the local authorities since there was "no sufficient nexus" between the domestic violence incident at issue and any firearms that he may own. Muench later supplemented his objections by arguing there was no evidence McGrady had a reasonable fear of imminent serious physical harm to her person that necessitated the domestic relations court issuing a full DVCPO.

{¶ 9} On November 20, 2018, the domestic relations court issued a decision overruling Muench's objections. In so holding, the domestic relations court found McGrady's testimony credible that Muench injured her by shutting the door on her as she tried to enter the Muench home. The domestic relations court also found McGrady's testimony credible that Muench shoved her, grabbed her, and "then lifting her off the ground as he removed [her] from his front porch. With such action, he went beyond what was required to act in self-defense." The domestic relations court further found that McGrady was not required to "demonstrate additional acts of domestic violence [had occurred after the ex parte order was issued] in order to justify further implementation of the DVCPO."

{¶ 10} In addition to these findings, the domestic relations court found no merit to

Muench's claim that he should not be ordered to surrender his firearms to the local authorities. The domestic relations court based its decision on the language found in 18 U.S.C. § 922(g)(8). Pursuant to that statute, it is unlawful for any person who is subject to court order restraining that person from "harassing, stalking, or threatening an intimate partner" to possess a firearm. Specifically, in applying the provisions of 18 U.S.C. § 922(g)(8), the domestic relations court held:

> Father next objects to the condition of the DVCPO that requires him to turn over his firearms. Father claims that he does not "possess" weapons because they are part of a "private trust" which is memorialized on a piece of paper, notarized, with the signatures of himself, his parents, and a family friend. He also cites several Ohio appellate cases addressing the issue.
>
> The Court disagrees with Father's objection. The Court finds that Father has an obvious intention to circumvent the law. He admitted in his testimony that he "owns" the firearms. Moreover, the name of the private trust is CMM, which are Father's initials. The Court finds nothing in this trust agreement that places the exclusive control of Father's firearms into an entity beyond his control, particularly since his mother testified she knew nothing of the private trust.
>
> The state appellate cases Father cites are trumped by federal law. 18 U.S.C. 922(g)(8) forbids Father from possessing weapons and ammunition once he is subject to a protection order. Putting one's weapons into a private trust is not sufficient to subvert federal law. Father must surrender the firearms.

### Appeal

{¶ 11} Muench now appeals from the domestic relations court's decision, raising a single assignment of error for review. In his single assignment of error, Muench challenges the domestic relations court's decision finding it was necessary to grant a full DVCPO to McGrady. Muench also challenges the domestic relations court's decision ordering him to surrender his firearms to the local authorities. We find no merit to Muench's claims.

### Domestic Violence Civil Protection Order

{¶ 12} A petition for a DVCPO is governed by R.C. 3113.31. *Crawford v. Brandon,*

- 5 -

12th Dist. Butler Nos. CA2013-08-150 and CA2013-08-151, 2014-Ohio-3659, ¶ 6, citing *Wolfe v. Wolfe*, 5th Dist. Stark No. 2013CA00196, 2014-Ohio-2159, ¶ 7. Pursuant to that statute, to obtain a DVCPO the petitioner must prove by a preponderance of the evidence that the respondent has engaged in an act of domestic violence against the petitioner or petitioner's family or household members. *McBride v. McBride*, 12th Dist. Butler No. CA2011-03-061, 2012-Ohio-2146, ¶ 12, citing *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus. "Preponderance of the evidence" means the greater weight of the evidence, or evidence that leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence. *Halcomb v. Greenwood*, 12th Dist. Clermont Nos. CA2018-03-008, CA2018-03-010, CA2018-03-012, and CA2018-03-013, 2019-Ohio-194, ¶ 3, citing *Eckstein v. Colian*, 7th Dist. Columbiana No. 11 CO 22, 2012-Ohio-4038, ¶ 14.

{¶ 13} As defined by R.C. 3113.31(A)(1)(a), and as relevant here, the phrase "domestic violence" means "[a]ttempting to cause or recklessly causing bodily injury" to a "family or household member." Pursuant to R.C. 3113.31(A)(3)(b), a "family or household member" includes "[t]he natural parent of any child of whom the respondent is the other natural parent or is the putative other natural parent." And, while R.C. 3113.31 does not define the term "bodily injury," for purposes of the offense of domestic violence under R.C. 2901.01(A)(3), "'physical harm' to a person means 'any injury, regardless of its gravity or duration.'" *J.R. v. E.H.*, 10th Dist. Franklin No. 16AP-431, 2017-Ohio-516, ¶ 13, quoting *State v. Reynolds*, 10th Dist. Franklin No. 03AP-701, 2004-Ohio-3692, ¶ 14.

### Standard of Review

{¶ 14} "A trial court's decision to grant or deny a DVCPO will not be reversed where such decision is supported by the manifest weight of the evidence." *Barrett v. Barrett*, 12th Dist. Warren No. CA2016-04-033, 2017-Ohio-250, ¶ 19. The standard of review for a

manifest weight challenge in a civil case is the same as that applied to a criminal case. *Dunn v. Clark*, 12th Dist. Warren No. CA2015-06-055, 2016-Ohio-641, ¶ 8, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. In considering a manifest weight challenge, a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial ordered. *Hacker v. House*, 12th Dist. Butler No. CA2014-11-230, 2015-Ohio-4741, ¶ 21, citing *Eastley* at ¶ 20. A judgment will not be reversed as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case. *Sterling Constr., Inc. v. Alkire*, 12th Dist. Madison No. CA2016-12-032, 2017-Ohio-7213, ¶ 8.

**Analysis**

{¶ 15} Muench initially argues the domestic relations court erred by issuing the DVCPO since there were conflicting accounts regarding the domestic violence incident at issue. Muench is essentially arguing that the domestic relations court acted improperly by crediting McGrady's testimony over his testimony and the testimony of his supporting witnesses. However, it is well-established that a trial court, particularly a domestic relations court, is in the best position to assess the credibility of witnesses and the weight to be given to their testimony. *Greenwood*, 2019-Ohio-194 at ¶ 40. Therefore, because the domestic relations court was best suited to assess the credibility and the weight to be given to the witnesses' testimony, this court should not, and will not, substitute our judgment for that of the domestic relations court. It is not the role of this court to substitute its own determination of credibility in place of the domestic relations court. *Crawford v. Brandon*, 12th Dist. Butler Nos. CA2013-08-150 and CA2013-08-151, 2014-Ohio-3659, ¶ 15. Muench's claim otherwise lacks merit.

{¶ 16} Muench next argues the domestic relations court erred by issuing the DVCPO since there was no evidence he and McGrady had been involved in any additional domestic violence incidents, nor any evidence that he had made any new threats towards McGrady, after the ex parte order was issued. However, while past acts alone are not enough to support the issuance of a DVCPO, *see McVean v. McVean*, 12th Dist. Butler No. CA2018-03-054, 2018-Ohio-4062, ¶ 20, there is no requirement that the petitioner be a victim of further domestic violence incidents to justify the issuance of a full DVCPO. If that were the case the domestic relations court would be limited to issuing a DVCPO only in those cases where the respondent was found to have violated an earlier ex parte order. That was clearly not the General Assembly's intent when enacting the domestic violence statutes. *See Felton*, 79 Ohio St.3d at 37 ("[t]he General Assembly enacted the domestic violence statutes specifically to criminalize those activities commonly known as domestic violence and to authorize a court to issue protection orders designed to ensure the safety and protection of a complainant in a domestic violence case").

{¶ 17} Despite Muench's claims, a petitioner need not be a victim of a respondent's prolonged, continuous, or repeated acts of domestic violence after an ex parte order has been issued before a DVCPO can be ordered. The petitioner instead need only show "'by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence.'" *Kohus v. Daly*, 12th Dist. Clermont No. CA2015-05-042, 2016-Ohio-73, ¶ 42, quoting *Felton* at paragraph two of the syllabus. McGrady, as the petitioner in this case, satisfied that burden. This is confirmed by McGrady's testimony that Muench hit her with the door "over and over" while she was trying to retrieve D.M. from the Muench home, shoved her into the door frame several times, and "picked [her] up in a choke hold and carried [her] down the stairs and down the sidewalk."

{¶ 18} Muench finally argues the domestic relations court erred by requiring him to

surrender his firearms to the local authorities. The domestic relations court denied Muench's argument upon finding 18 U.S.C. § 922(g)(8) forbid him – as an "intimate partner" to McGrady as that term is defined by 18 U.S.C. § 921(a)(32) – from possessing any firearms until the DVCPO issued to McGrady expired. As noted above, pursuant to 18 U.S.C. § 922(g)(8), it is unlawful for any person who is subject to court order restraining that person from "harassing, stalking, or threatening an intimate partner" to possess a firearm.

{¶ 19} While the General Assembly has not made it a requirement that any respondent who is subject to a DVCPO be restricted from possessing a firearm, *Cee v. Stone*, 3d Dist. Union No. 14-17-06, 2017-Ohio-8687, we find no error in the domestic relations court's decision to include such a restriction in the DVCPO at issue here. *See Woolum v. Woolum*, 131 Ohio App.3d 818, 824 (12th Dist.1999) ("trial court was within its discretion to incorporate the remedy provided by congress" in 18 U.S.C. § 922(g)(8) where appellant was subject to a DVCPO).[1]

{¶ 20} "A trial court can include a prohibition about firearms in an order if it finds, after a full hearing, that the order is equitable, fair, and necessary to bring about a cessation or prevention of domestic violence." *Snell v. Snell*, 5th Dist. Richland No. 09-CA-134, 2010-Ohio-2245, ¶ 35. The fact that Muench may have placed his firearms in a so-called "private trust" does not change this outcome. This is because, just as the domestic relations court found, "[p]utting one's weapons into a private trust is not sufficient to subvert federal law." This is particularly true here when considering Muench's testimony that it was he, and not a private trust, that "owned" the firearms subject to the DVCPO.

**Conclusion**

{¶ 21} The domestic relations court did not err by granting a DVCPO to McGrady

---

1. For more information on the firearms prohibition found in 18 U.S.C. § 922(g)(8) *see* https://www.supremecourt.ohio.gov/JCS/domesticViolence/resources/firearms.pdf.

where the evidence supported its decision finding Muench had engaged in an act of domestic violence against her. This is true despite the fact that Muench did not engage in any further domestic violence incidents against McGrady after the original ex parte DVCPO was issued. The domestic relations court also did not err by ordering Muench, as a statutorily defined "intimate partner" to McGrady, to surrender his firearms to the local authorities until the DVCPO expired. Therefore, finding no merit to any of the arguments raised herein, Muench's single assignment of error lacks merit and is overruled.

{¶ 22} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.