[Cite as *Hankinson v. Cooper*, 2022-Ohio-1896.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| BRANDY HANKINSON, | : | |
| Appellee, | : | CASE NO. CA2021-11-137 |
| | : | O P I N I O N |
| - vs - | | 6/6/2022 |
| | : | |
| CLAYTON COOPER, | : | |
| Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DV2021-07-0437

Ched H. Peck, for appellee.

Cook Howard Law, Ltd., and Melynda W. Cook Howard, for appellant.

**S. POWELL, J.**

{¶ 1}  Appellant, Clayton Cooper, appeals the decision of the Butler County Court of Common Pleas, Domestic Relations Division, granting the petition for a domestic violence civil protection order ("DVCPO") against him filed by his former girlfriend and the

mother of his child, appellee, Brandy Hankinson.[1]  For the reasons outlined below, we reverse the domestic relations court's decision and remand this matter to the domestic relations court for further proceedings.

### The Parties

**{¶ 2}**   Cooper and Hankinson are the biological parents of one child, a girl, born on February 13, 2018.  Cooper and Hankinson were never married.  Cooper resides in Johnstown, Cambria County, Pennsylvania.  Hankinson resides in Butler County, Ohio.  Cooper and Hankinson's daughter, as well as Hankinson's older son from a previous relationship, also reside with Hankinson in Butler County, Ohio.

### Facts and Procedural History

**{¶ 3}**   On July 9, 2021, Hankinson filed a petition with the domestic relations court seeking a DVCPO against Cooper.  Hankinson also requested the domestic relations court grant her an ex parte order of protection against Cooper.  To support her petition, Hankinson alleged that Cooper had "repeatedly" sent her threatening "letters and emails" as "that's his only means of contact."  Because of Cooper's unwanted contact with her, Hankinson alleged that she had "changed [her] number several times" and "debated" moving "for [her] children's and [her] protection."  Hankinson also alleged that she had "previously had a protection order in the State of Pennsylvania, Indiana County" because of Cooper "assaulting" her while she was pregnant with their daughter.  Hankinson further alleged that Cooper had "threatened [her] life" and "threatened [her] children."

**{¶ 4}**   Shortly after Hankinson filed her DVCPO petition, a domestic relations court magistrate held a hearing on Hankinson's request for an ex parte order of protection against Cooper.  Following this hearing, the magistrate issued an order denying Hankinson's

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar for purposes of issuing this opinion.

request for an ex parte order of protection. After denying Hankinson's request for an ex parte order, the magistrate then ordered a full hearing on Hankinson's petition for a DVCPO. This hearing was scheduled to take place on July 21, 2021.

{¶ 5} On July 13, 2021, Cooper was personally served with the magistrate's order denying Hankinson's request for an ex parte order of protection against him. Cooper was also personally served with notice that a full hearing on Hankinson's DVCPO petition was scheduled to take place on July 21, 2021. Eight days later, on July 21, 2021, the previously scheduled full hearing on Hankinson's DVCPO petition went forward before another domestic relations court magistrate. Despite receiving notice of the July 21, 2021 hearing date, there is no dispute that Cooper did not appear at this hearing. There is also no dispute that Hankinson appeared at this hearing pro se.

{¶ 6} During this hearing, Hankinson testified she had previously received an order of protection against Cooper in 2017 while she was living in Pennsylvania and pregnant with her and Cooper's daughter. Hankinson testified she received this protection order after her obstetrician noticed she had "bruises" on her stomach. Documentation related to that Pennsylvania order of protection, as well as several letters that Hankinson had since received from Cooper, were then admitted into evidence. Within those documents, Hankinson alleged that while living in Pennsylvania in 2017 that Cooper had called her names, pushed her, hit her, and "shoved her against the wall" after she found him rifling through her jewelry. This is in addition to Hankinson alleging Cooper had previously told her that "he knows how to get away with murdering someone" and that Cooper had "threatened [her] if [she] ever was to leave him."

{¶ 7} Although successful in her efforts to obtain an order of protection against Cooper in Pennsylvania in 2017, Hankinson testified that she later had that order of protection lifted in 2019 because she was "under the misconception" that she needed to "lift

it in order for [Cooper] to see [their] daughter." Hankinson testified that after the Pennsylvania order of protection was lifted Cooper left her several voicemail messages threatening to cause her physical harm. Hankinson testified this included voicemail messages where Cooper threatened to "burn [her] house down with [her] and [her] children inside." Hankinson testified that because of Cooper's threats to her and her children she moved from Pennsylvania to Ohio "for [her] protection." Hankinson also testified that she changed her phone number "several times," that she was "contemplating possibly moving again," and that she was even thinking of changing her name, if necessary. Thereafter, when specifically asked by the magistrate if "those threats, [Cooper] made those [threats] to you since the last order was lifted," Hankinson testified, "Yes."

{¶ 8} Following this hearing, the magistrate issued a decision granting Hankinson's petition for a DVCPO against Cooper. After its decision was filed, the magistrate then issued the order of protection to Hankinson. In so doing, the magistrate noted on the second page of that protection order that it had made the following three findings of fact:

The Court hereby makes the following findings of fact:

I find, by a preponderance of the evidence, Respondent committed acts or engaged in behaviors directed toward a family or household member in violation of R.C. 3113.31(A)(1)(a):

☒ (a) Attempting to cause or recklessly causing bodily injury

☒ (b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 (menacing by stalking) or 2911.211 (aggravated trespass) of the Revised Code

☒ (c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code

☐ (d) Committing a sexually oriented offense

{¶ 9} On August 4, 2021, Cooper filed an objection to the magistrate's decision granting Hankinson's DVCPO petition. To support his objection, Cooper argued the magistrate's decision was "contrary to law" and against the manifest weight of the evidence. Cooper also argued the magistrate's decision was "based upon erroneous findings of fact,"

"not supported by the record in this case," and "not supported by sufficient evidence to meet the requisite burden." Cooper filed a supplemental objection to the magistrate's decision on October 12, 2021. In support of his supplemental objection, Cooper argued the magistrate's decision was both factually and legally incorrect because Hankinson failed to prove he had "engaged in domestic violence" against her pursuant to R.C. 3113.31(A)(1)(a)(i), (ii), or (iii). Cooper also argued the evidence Hankinson offered in support of her DVCPO petition failed to provide sufficient evidence to support the magistrate's decision issuing a DVCPO against him.

{¶ 10} On October 13, 2021, the domestic relations court filed a decision and order overruling Cooper's objection to the magistrate's decision set forth above. In so doing, the domestic relations court initially stated that it was granting Hankinson an order of protection against Cooper based on Hankinson's uncontradicted testimony "that there was prior violence between the parties, and produced documentation of prior violence in [Pennsylvania] * * *." The domestic relations court also stated that it was granting Hankinson an order of protection against Cooper because Cooper "poses a threat of further violence" against Hankinson. In reaching this decision, the domestic relations court specifically stated that it had "carefully reviewed the evidence" and conducted a de novo review of the record prior to issuing its decision.

{¶ 11} After its decision was filed, the domestic relations court then issued the order of protection to Hankinson. On the second page of the DVCPO, the domestic relations court noted that, unlike the magistrate's three findings of fact set forth above, it had made the following single fact finding:

The Court hereby makes the following findings of fact:

I find, by a preponderance of the evidence, Respondent committed acts or engaged in behaviors directed toward a family or household member in violation of R.C. 3113.31(A)(1)(a):

☒ (a) Attempting to cause or recklessly causing bodily injury

☐ (b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 (menacing by stalking) or 2911.211 (aggravated trespass) of the Revised Code

☐ (c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code

☐ (d) Committing a sexually oriented offense

**Cooper's Appeal and Single Assignment of Error**

{¶ 12} On November 10, 2021, Cooper filed a timely notice of appeal. Cooper's appeal now before this court for decision, Cooper raises one assignment of error for review challenging the domestic relations court's decision granting Hankinson's petition for a DVCPO. To support this claim, Cooper argues the domestic relations court erred by granting Hankinson a DVCPO against him in Ohio in 2021 based on "past acts of violence" that occurred between him and Hankinson in Pennsylvania in 2017.

*DVCPO Standard Under R.C. 3113.31*

{¶ 13} "The purpose of a DVCPO is the protection of a petitioner from violence by the respondent." *Halcomb v. Greenwood*, 12th Dist. Clermont Nos. CA2019-03-019, CA2019-03-020, CA2019-03-023, and CA2019-03-024, 2020-Ohio-2768, ¶ 11. A petition requesting the issuance of a DVCPO against the respondent is governed by R.C. 3113.31. *Crawford v. Brandon*, 12th Dist. Butler Nos. CA2013-08-150 and CA2013-08-151, 2014-Ohio-3659, ¶ 6. Pursuant to that statute, for the petitioner to obtain a DVCPO against the respondent, "the petitioner must prove by a preponderance of the evidence that the respondent has engaged in an act of domestic violence against petitioner, petitioner's family, or petitioner's household members." *McBride v. McBride*, 12th Dist. Butler No. CA2011-03-061, 2012-Ohio-2146, ¶ 12.

{¶ 14} R.C. 3113.31(A)(1)(a)(i) thru (iv) defines the phrase "domestic violence" to

include, among other things, the occurrence of one or more of the following acts against a family or household member:

(i) Attempting to cause or recklessly causing bodily injury;

(ii) Placing another person by the threat of force in fear of imminent serious physical harm;

(iii) Committing any act with respect to a child that would result in the child being an abused child; and

(iv) Committing a sexually oriented offense.

{¶ 15} R.C. 3113.31 does not define the term "bodily injury." *McGrady v. Muench*, 12th Dist. Warren No. CA2018-12-145, 2019-Ohio-2677, ¶ 13. However, although the term "bodily injury" is not defined by R.C. 3113.31, for purposes of the offense of domestic violence in violation of R.C. 2919.15(A), (B), and (C), the phrase "physical harm to persons" is defined by R.C. 2901.01(A)(3) to mean "any injury, illness, or other physiological impairment, regardless of its gravity or duration." *See J.R. v. E.H.,* 10th Dist. Franklin No. 16AP-431, 2017-Ohio-516, ¶ 13, citing *State v. Reynolds*, 10th Dist. No. 03AP-701, 2004-Ohio-3692, ¶ 14.

*Manifest Weight of the Evidence Standard of Review*

{¶ 16} "'A trial court's decision to grant or deny a DVCPO will not be reversed where such decision is supported by the manifest weight of the evidence.'" *Porter v. Porter*, 12th Dist. Butler No. CA2019-11-185, 2020-Ohio-4504, ¶ 36, quoting *Barrett v. Barrett*, 12th Dist. Warren No. CA2016-04-033, 2017-Ohio-250, ¶ 19. The standard of review for a manifest weight challenge in a civil case is the same manifest weight of the evidence standard that is applied to a criminal case. *Dunn v. Clark*, 12th Dist. Warren No. CA2015-06-055, 2016-Ohio-641, ¶ 8, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. Under a manifest weight challenge, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the

evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial ordered. *Hacker v. House*, 12th Dist. Butler No. CA2014-11-230, 2015-Ohio-4741, ¶ 21, citing *Eastley* at ¶ 20. "A judgment will not be reversed as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case." *McGrady v. Muench*, 12th Dist. Warren No. CA2018-12-145, 2019-Ohio-2677, ¶ 14, citing *Sterling Constr., Inc. v. Alkire*, 12th Dist. Madison No. CA2016-12-032, 2017-Ohio-7213, ¶ 8.

### *Cooper's Arguments and Analysis*

**{¶ 17}** As noted above, in support of his single assignment of error, Cooper argues the domestic relations court erred by granting Hankinson's petition for a DVCPO based on "past acts of violence" that occurred in Pennsylvania in 2017, several years prior to 2021 when Hankinson filed her petition for a DVCPO in this case. This is because, as Cooper correctly notes, successive petitions for a DVCPO involving the same parties arising out of the same underlying facts are subject to the doctrines of res judicata and collateral estoppel. *See Clagg v. Clagg*, 10th Dist. Franklin No. 08AP-570, 2009-Ohio-328, ¶ 16 (the doctrines of res judicata and collateral estoppel did not apply to successive petitions for a DVCPO where "the petitions did not arise out of the same transaction or occurrence"); *see, e.g., Bach v. Crawford*, 2d Dist. Montgomery No. 19531, 2003-Ohio-1255, ¶ 15 ("[t]he trial court did not err in determining that res judicata barred Mr. Bach's claims stemming from incidents before August of 2000 and that the evidence of events after that date did not amount to domestic violence under R.C. 3113.31"). We agree. Therefore, because the record is devoid of any evidence Cooper had caused or attempted to cause bodily injury to Hankinson after she had the Pennsylvania order of protection lifted in 2019, the domestic relations court's decision finding Hankinson was entitled to a DVCPO against Cooper under R.C.

3113.31(A)(1)(a)(i) was against the manifest weight of the evidence.

{¶ 18} The domestic relations court, however, did not base its decision to grant Hankinson's petition for a DVCPO against Cooper solely on the "past acts of violence" that occurred between Cooper and Hankinson in Pennsylvania in 2017. The domestic relations court also based its decision to grant Hankinson's petition on its finding that Cooper "poses a threat of further violence" against Hankinson. Although the domestic relations court was not explicit in its decision, this seems to be a reference to the definition of "domestic violence" set forth under R.C. 3113.31(A)(1)(a)(ii). As noted above, pursuant to that statute, the term "domestic violence" is defined to mean placing another person by the threat of force in fear of imminent serious physical harm. This would make sense when considering Hankinson specifically testified that Cooper had threatened to cause her serious bodily harm by burning her house down with her and her children inside sometime after she had the Pennsylvania order of protection lifted in 2019.

{¶ 19} The domestic relations court, however, did not make this finding within the DVCPO it issued to Hankinson. Rather, as set forth previously, the domestic relations court made only one finding. That being:

> The Court hereby makes the following findings of fact:
>
> I find, by a preponderance of the evidence, Respondent committed acts or engaged in behaviors directed toward a family or household member in violation of R.C. 3113.31(A)(1)(a):
>
> ☒ (a) Attempting to cause or recklessly causing bodily injury
>
> ☐ (b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 (menacing by stalking) or 2911.211 (aggravated trespass) of the Revised Code
>
> ☐ (c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code
>
> ☐ (d) Committing a sexually oriented offense

{¶ 20} The ambiguity between what the domestic relations court stated within its decision and order, and what box the domestic relations court checked on the DVCPO itself,

may have simply been a clerical error. A "clerical error" is a mistake apparent on the record that does not involve a legal decision or judgment. *State ex rel. Allen v. Goulding*, 156 Ohio St.3d 337, 2019-Ohio-858, ¶ 11. This court, however, cannot make that decision without further clarification from the domestic relations court. For this reason, we find it necessary to reverse and remand this matter to the domestic relations court for further proceedings. Upon remand, the domestic relations court shall issue a decision and order that alleviates this ambiguity by citing with specificity what subsection(s) of R.C. 3113.31(A)(1)(a) it intended to rely on when granting Hankinson's petition for a DVCPO against Cooper. The domestic relations court shall also issue, if necessary, an amended DVCPO that has the correct box(es) checked on page two of the DVCPO itself that accurately reflects what the domestic relations court intended when it stated that it was granting Hankinson's petition because Cooper "poses a threat of further violence" against Hankinson.

**Conclusion**

{¶ 21} For the reasons outlined above, and finding an ambiguity in the domestic relations court's decision and order that must be resolved, we reverse and remand this matter to the domestic relations court for further proceedings.

{¶ 22} Judgment reversed and remanded.

M. POWELL, P.J., and HENDRICKSON, J., concur.